WILLIAM H. MORROW v. THE INHABITANTS OF THE TOWN-SHIP OF VERNON, IN THE COUNTY OF SUSSEX.

1. The holder of a bounty note given by a township, payable to J. or bearer, provided the township be relieved of one man in the draft, and that the legislature authorize the raising of bounties for drafted men on that call, is a chose in action not assignable, so that the assignee may sue in his own name.

2. To entitle the plaintiff to recover, he must prove that the township was relieved, and the legislative authority given.

3. A certificate by the war department of a copy of a record in their custody, is evidence; but a fact outside the record cannot be thus certified.

4. When an act of the legislature authorizes the assessment of $400 for each of the (three) men who relieved the township under a call for men, the plaintiff must bring himself within all the descriptive words of the act, to entitle him to recover.

---

This case was tried at the Sussex Circuit Court, September Term, 1871, and a verdict rendered for the plaintiff, for the amount of the note held by him, and interest. The motion for a rule to show cause was argued in this court, on a state of the case agreed upon by the parties. It shows the note or writing upon which the action was founded, as follows :

" $400.

" One year after date, the township of Vernon promises to pay Thomas Jennings or bearer, the sum of four hundred dollars, for relieving the township of one man, in the draft that has just fallen upon the township in the call for three hundred thousand men, provided the town has been relieved, and the raising of bounties for drafted men in this call to this amount by a tax upon the township is sustained by a law to that effect, for value received, with interest from date.

" Vernon, March 16th, 1865."

Stamped and signed, " Amos Farber, chairman of town committee. Thomas T. Simonson, town clerk. By order of town committee."

The plaintiff claims as holder of the note for a valuable consideration.

Argued before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL, and SCUDDER.

For plaintiff, *W. H. Morrow,* and *J. R. Emery.*

For defendants, *R. Hamilton,* and *T. Kays.*

SCUDDER, J. The first cause assigned for setting aside the verdict, that the township committee had no power to make such contract, and that the inhabitants of the township could not confer such authority upon them for the special purposes named therein, under the general powers contained in sections eleven and twelve of township acts, (*Nix. Dig.* 979,*) is answered by the act approved March 27th, 1866, (*Laws of 1866, p.* 706,) which enacts "that the proceedings of the inhabitants of said township, at said town meetings, and the acts and doings of the town committee, in carrying the same into effect, be, and the same are hereby made valid and effectual in law," &c.

Many similar statutes have been passed, and the construction to be given them is established. Where the inhabitants

---
* *Rev.,* p. 1194.

or public authorities have ordered moneys raised and appropriated to the payment of volunteers, substitutes, and drafted men, such action, although irregular, and without authority, is made valid and effectual by act of the legislature. *State* v. *Demarest*, 3 *Vroom* 528; *Hawthorne* v. *Hoboken*, 3 *Vroom* 172; *State* v. *Apgar*, 2 *Vroom* 358.

To the extent to which their acts are thus ratified, they are legal; and beyond that they are illegal. But it is said this act merely authorizes the township committee to assess and collect the sum of $400 for each man, with interest and expenses, and does not, in terms, confirm the securities given for the payment of the same. The preamble, however, shows that the inhabitants authorized the township committee *to borrow*, if necessary, *on the credit of the township*, such sum of money as would be necessary to pay $400 to each volunteer, substitute, or drafted man, as would relieve the township, &c. Section one makes valid and effectual the proceedings of the inhabitants, and the acts and doings of the town committee in carrying the same into effect. The power to borrow money, in anticipation of the after assessment and collection, is certainly included in these terms of the statute; and, by implication, any security given to a lender of the money, or to the volunteer, substitute, or drafted man who gave credit to the township, would also be confirmed.

The objection that the action cannot be maintained in the name of the present plaintiff, because the writing is a chose in action, and not assignable at law, so that the assignee may sue in his own name, is merely formal, and if valid, may be amended by inserting the name of Jennings as nominal plaintiff, upon proper terms. The instrument is not a promissory note, and negotiable, for the payment is uncertain and contingent. It is a contract for the payment of money upon an event which may or may not happen. The assignment also is not made in writing, within the statute, (*Nix. Dig.* 613, § 26,) nor does it appear that the assignor is dead, (*Nix. Dig.* 737, § 142,) hence the assignee cannot sue at law in his own name, but must use the name of the original promisee. The court

may add formal parties, and strike out such as are improperly *joined*, upon such terms as to the court may seem fit, for the purpose of determining in the suit the real question in controversy between the parties. *Washburn* v. *Burns*, 5 *Vroom* 18.

It seems to have been assumed by the plaintiff that, because the promise was to pay a sum of money to Jennings or bearer, that the holder, by delivery, is in the position of the owner of negotiable paper by a complete transfer. But this is not so. There has been a manifest disposition in the courts and in legislatures to extend the operation of the rules applicable to commercial paper to other securities which, by common usage, and for the accommodation of business, pass from hand to hand, representing money values. Many such cases will be found collated in the note to *Miller* v. *Race*, 1 *Smith's Lead. Cas.* 746; *Morris Canal* v. *Fisher*, 1 *Stockt.* 667; *Same* v. *Lewis*, 1 *Beas.* 329; *Winfield* v. *Hudson*, 4 *Dutcher* 255. The last case was an action on an "improvement certificate," payable to the contractor or the holder, and transferable by endorsement. It was held to be assignable, so that the assignee might sue in his own name, but that such assignment must be made by endorsement, according to the terms of the certificate.

The modifications of the common law that have been introduced, changing the principle that choses in action are not assignable, so as to vest the right of action in the assignee, are there shown.

As it there appears, in these changes the securities are designed to be circulated and pass by delivery as money, or by sale and transfer, the legal title becomes vested, free from all equities between the prior parties. They establish that large class of securities known as negotiable paper, such as notes, bills, and corporation bonds, which have become the frequent representatives of money in the operations of trade and exchange. An improvement certificate, in the case above cited, was under seal, and assignable in general terms, by our statute concerning obligations, (*Nix. Dig.* 630, § 2,[*]) but it does not, therefore, belong to the class of negotiable securities. It

[*] *Rev., p.* 850, § 19.

is a special contract for the payment of labor, according to the terms of the contract, and not designed to circulate as money, or for sale and transfer by delivery. The instrument of writing given by the township of Vernon is not under seal, and not assignable under the foregoing statute. It is in form a note for the payment of money, at a time specified, to the person named therein, or bearer, stating a consideration which must be rendered, and a contingency upon which the payment depends. There is a double contingency; the right to payment is based upon the relief of the township of one man in the draft; and the passage of law sustaining the raising of bounties for drafted men in that call, to the amount named by a tax on the township. If such a note in form were made by an individual, there could be no doubt that it would be not negotiable, although it were made payable to bearer; and there can be no reason or authority shown for a different construction, where it is made by a corporation, or by public officers, unless there be some commercial usage or statutory provision by which its character is changed. None such is averred in the pleadings, or appears in the evidence. The holder must, therefore, prove both points of the proviso before he can recover in the action. This he has attempted to do. A descriptive list of the men called into the service of the United States was offered in evidence, duly certified by the adjutant-general and by the secretary of war, under the seal of the department of war at Washington, by which it appears that Thomas Jennings was *enrolled* at Vernon, New Jersey, June, 1864, and *drafted* February 24th, 1865, at Vernon, for one year. This is certified to be a true copy from the records of the provost marshal, fourth congressional district of New Jersey; " and that Thomas Jennings, named therein, was credited to Vernon township, Sussex county, New Jersey, and the said credit was applied upon the call of December 19th, 1864."

It will be observed that the certificate relates to the records of the provost marshal. By the act of February 24th, 1864, (*United States Stat. at Large, p.* 9, § 16,) the copies of any

record of a provost marshal or board of enrollment, certified by him or them, should be deemed and taken as evidence in any civil or military court in like manner as the original record. But, admitting that these records of the provost marshal and board of enrollment are now properly records in the war department, and may be certified as such by the adjutant general and the secretary of war, under the seal of that department, they can only certify the record as it appears in their office. A matter of fact outside the record cannot be certified. If it was the duty of the provost marshal to record the fact that a man was credited to a particular township, and that such credit was applied on a call for troops, the proper evidence would be a copy of the record, duly authenticated. As to matters he was not bound to record, any certificate being extra-judicial, is merely the statement of a private person, and will be rejected as hearsay. 1 *Greenl. Ev.*, § 498.

In examining the copy of the record certified, a descriptive list, and shown by proof to be an examined copy, which was offered in evidence, it does not appear that Thomas Jennings was credited on the call of December 19th, 1864, which was the call for three hundred thousand men referred to in the note upon which action is brought. The statement in the certificate that he was so credited, is a fact dehors the record as it appears, and must be rejected. The case then stands without any legal proof that Jennings relieved the township of one man in that draft. By no record or evidence in the case does it appear that Jennings ever reported himself, was accepted, and enlisted. He was first enrolled as liable to draft, then drafted—this is all that the record shows.

By his own testimony it is shown that he was never examined, accepted, and enlisted. He was not needed for the public service. The war ended soon after the draft, and he was released from any call for service. This is doubtless the reason that the township has refused to pay the amount of his claim. The relief contemplated when the note was given, was not needed, and the service was not rendered.

But the plaintiff, by the terms of the note, must also prove that the raising of bounties for drafted men, in the call of December 19th, 1864, to the amount ($400) by a tax upon the township, was sustained by a law of the legislature. The law of February 27th, 1866, was offered for that purpose; but the amount authorized to be raised by that act was "the said sum of four hundred dollars for each of the (three) men who so relieved the township under said call," &c. These men are not named in the act, nor does it appear that Jennings was one of the men who answer this description. This cannot be assumed, but must be proved as part of his case. It is claimed by the township that three other men, who actually relieved the township under the call, were intended by the act, and have received their bounties. The act is limited to three, and will not be extended to all who hold the paper of the township committee. The word "three," although in parenthesis, cannot be rejected as meaningless, or as mere surplusage, or as a mistake in number. The plaintiff must bring Jennings within all the descriptive words of the act, to entitle him to recover in this action. If more than three men have rendered the service which the township should pay for, then there should be more legislation to include them. The court cannot, by construction, extend the benefits of the act to those who are not included within its terms, however just and equitable their claims may be. And, in this case, there should be no strained construction for the benefit of one who has not shown that he rendered any service to the township.

The case of *Hawthorne* v. *City of Hoboken, ante p.* 247, in this court, was cited to sustain this verdict, but the facts were very different. There the certificate of the war department showed a complete record of the enlistment, mustering into service, and credit to the city of Hoboken. Besides this, there was the original certificate, given by the provost marshal of the district, that the plaintiff was enlisted and credited to the second ward of Hoboken, in the call for three hundred thousand men. The enlistment and credit to the city were also proved by the testimony of the provost

marshal and his assistant, and by other oral proof. The evidence was therefore full and complete in every particular, both by the record, and by parol proof outside the record. There was no attempt, in that case, to certify a fact which did not appear in the schedule which had been returned and rendered in the war department.

The plaintiff having, in this case, failed to prove the facts upon which, by the terms of the contract, the payment of the sum of $400 and interest was to be made to Jennings, the verdict obtained by him must be set aside, and a new trial granted.

BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and WOODHULL concurred.